WALTON SHERMAN AND FRANK M. BAXTER, PROSECU-
TORS, v. CITY OF LONG BRANCH, RESPONDENT.

Decided January 14, 1931

Before Justices PARKER, CAMPBELL and BODINE.

For the prosecutors, *James D. Carpenter, Jr.*

For the respondent, *William L. Edwards.*

PER CURIAM.

These two writs bring up for review two ordinances of the
city of Long Branch. The first (case 254) is known as the
highway construction ordinance, and the second (case 255)
as the bond issue ordinance. The title of the first is, "An
ordinance providing for the laying out, widening, straighten-
ing, improving and constructing a new highway or avenue
from the Monmouth Beach line southerly to the intersection
of West End avenue with West End Plaza and to acquire
as much land or real estate or interest therein as may be
necessary for the making of such improvement, either by

purchase or condemnation in the manner prescribed by law; and providing for the grading, curbing and paving of said highway or avenue so laid out and constructed and for the levying of assessments on the property especially benefited thereby," and besides providing for the things expressed in its title, appropriates the sum of $2,000,000 to meet the cost of the improvement. The title of the second is, "An ordinance authorizing the issue of two million dollars highway bonds of the city of Long Branch, N. J." They are what are known as companion ordinances.

At the outset we will dispose of two contentions of the respondent looking to a dismissal of the writs.

The first is that the prosecutors have no special personal or property interest that will be affected nor will they suffer any special injury beyond that which will be in common with the general public.

It is conceded that prosecutors are taxpayers of the city and it would seem to be certain that some part of the cost of the proposed improvement will fall upon the city at large and eventually be paid from funds raised by general taxation. In fact the bonding ordinance provides that one-half of the proceeds from the issue is to be devoted to that purpose.

Respondents rely upon and cite *Tallon* v. *Hoboken*, 60 *N. J. L.* 212; *Ford* v. *Bayonne*, 87 *Id.* 298, and *Union Towel Supply Co.* v. *Jersey City*, 99 *Id.* 54, but we conclude that the applicable rule is to be found in *Danforth* v. *Paterson*, 34 *Id.* 163; *City Publishing Co.* v. *Jersey City*, 54 *Id.* 437, and *Jordan* v. *Dumont*, 105 *Id.* 197, which disposes of the contention adversely to the respondents.

The second point urged in this direction is that the prosecutors are in laches because the highway construction ordinance was introduced December 17th, 1929; finally passed December 31st, 1929, and thereafter published on January 3d, 1930, as required by the Walsh act (*Pamph. L.* 1911, *p.* 462), as superseded by section 24, article 37 of the Home Rule act. This provides that an ordinance of this character shall become operative ten days after publication after final

passage unless within that period protests by taxpayers representing ten per centum of the assessed valuation shall have been filed, in which event such ordinance shall remain inoperative until a proposition for the ratification thereof shall have been adopted by a majority of the qualified voters voting at an election called for that purpose.

The respondent insists that inasmuch as no action was taken in this manner the prosecutors are precluded from having the present writs of review. We find this to be not so. The situation is not analogous to that in *Holmes* v. *Morris,* 16 *N. J. L.* 526; *Traphagen* v. *West Hoboken,* 39 *Id.* 236, or *Hendey* v. *Ackerman,* 103 *Id.* 305. The statutory provision relied upon simply presents a method of determining, by a vote of the qualified electors, whether they approve or disapprove of the public policy and judgment of the governing body as expressed by such municipal act, and does not reach to a review of such an ordinance and the attending proceedings with an object to set them aside because of lack of authority in or legal errors committed by the municipal body.

*Certiorari* is the proper means to bring about and accomplish such a review.

Turning to the reasons argued by the prosecutors, they are:

First—The act (*Pamph. L.* 1929, *ch.* 171) under which respondent assumes to act, is unconstitutional:

(a) Because it violates article 4, section 7, paragraph 11 of the state constitution which provides: "The legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say, laying out, opening, altering and widening roads or highways" "regulating the internal affairs of towns and counties * * *."

(b) Because it contravenes article 4, section 7, paragraph 4 of the state constitution which provides "* * * Every law shall embrace but one object and that shall be expressed in the title * * *." Long Branch adopted and became incorporated under "An act relating to, regulating and providing for the government of cities" (*Pamph. L.* 1903, *ch.* 168), and, on March 12th, 1912, adopted the provisions of

the Walsh act. *Pamph. L.* 1911, *ch.* 221. The statute of 1929, *supra,* which it attacked, is entitled: "A supplement to an act entitled 'An act relating to regulating and providing for the government of cities,' approved April 8th, 1903." It is a supplement, therefore, to the act under which Long Branch is incorporated. It was approved April 23d, 1929, took effect immediately and is as follows:

"Any city now or hereafter governed by the provisions of the act to which this act is a supplement, in addition to the powers by the said act conferred, shall have the power to manage, regulate and control its finances and property, real and personal; to borrow money, and negotiate temporary loans in anticipation of taxes and other revenues, and to authorize, provide and pay for public improvements, including the acquiring, laying out, widening, straightening, improving, constructing, reconstructing and maintaining streets and highways, and to issue bonds, notes and other evidences of debt in payment thereof, which said bonds, notes and other evidences of debt may be refunded or repaid, in whole or in part, from benefit assessments, levied on property in such city, benefited thereby, which said bonds, notes or other evidences of debt, so issued, for the purposes of this act, shall not be included as part of the debt statement, or computed in the net debt of the municipality, or in anywise subject to the provisions of an act entitled 'An act to authorize and regulate the issuance of bonds and other obligations and the incurring of indebtedness by county, city, borough, village, town, township or any municipality governed by an improvement commission,' approved March 22d, 1916, and the acts amendatory thereof and supplemental thereto."

Under the first contention of unconstitutionality it is urged that up to the present time, Long Branch is the only municipality that has adopted and is operating under the City act of 1903, *supra,* and that the supplement of 1929, among other things, exempts bonds issued for road and highway purposes from the debt limit provided for and fixed by the Pierson act (*Pamph. L.* 1916, *p.* 538, § 12, ¶ 3, amended by *Pamph.*

*L.* 1929, *ch.* 174), thereby singling out, separating and setting apart Long Branch as the only municipality not affected and controlled by the Pierson act, which by its terms, otherwise, applies to every class of municipality in the state.

There appears to be no effort on the part of the respondent to conceal or refute the fact that the very purpose of the supplement is to relieve any city operating under the City act of 1903 from the requirements and restrictions of the Pierson act, and, in fact, such an effort would have been abortive for such is the only conclusion that can be reached from its plain language.

It is true, as prosecutors' counsel argues, that the Pierson act applies, in the broadest generality, to all municipalities. But if that act, by its terms, had excluded from its operation any cities or municipalities, belonging to a recognized class, or had it provided that indebtedness of municipalities, or those of any one or more class, issued to meet the expense of improvements such as provided for in the legislation now under attack, would that act thereby fall as prohibited by our constitution? Undoubtedly not. Nor do we think that the act in question has any such infirmity, because it does no more, it seems to us, than take cities incorporated under the City act of 1903 out of the operation and control of the Pierson act. It may well be that it is not desirable legislation and may be the initial movement to remove, one after another, municipalities of the several recognized classes from the requirements and control of the Pierson act, so that, eventually, it will completely lose its value and effectiveness. But, it would seem, with this the courts are not concerned, but it is rather a matter requiring the exercise of legislative discretion and judgment.

In *Harrington Township Road Commission* v. *Harrington Township,* 55 *N. J. L.* 327, it was held: "A law framed in general terms is not specialized by the fact that it exempts another general law from its operation."

In *Booth* v. *McGuinness,* 78 *N. J. L.* 346, it is said: "In the exercise of the judicial function of declaring an act of the

legislature unconstitutional, the ultimate question is not whether the court regards the constitution as permitting the act, but whether the constitution permits the court to disregard the act; the test being not the court's judgment as to the constitutionality of the act but its conclusion as to what judgment was permissible to the legislative branch of the government in which the constitution has reposed the duty of making such judgment as an incident of the law-making power; hence, if there be a permissible doubt as to the existence of the constitutional limitation invoked against the validity of an act, the courts will not declare the act to be contrary to the constitution."

The contention that the act is unconstitutional because it embraces more than one object and its title is not sufficient is based upon this, that while it is a supplement to the City act of 1903 and by its first object quite appropriately enlarged the powers of cities of that class in the management, regulation and control of their finances and properties, and with respect to the financing of street and highway improvements, nevertheless it has a second object, which is the exempting of such obligations from the provisions, requirements and limitation of the Pierson act, thereby making this legislation constitutionally defective for the reasons stated.

In *Boniewsky* v. *Polish Home,* 103 *N. J. L.* 323 (at *p.* 332), it was held that the construction to be placed upon the constitutional provision here invoked is, "that the leading subject of a statute should be fairly expressed in its title," citing *State Board* v. *Phillipsburg,* 83 *N. J. Eq.* 402; *affirmed,* 85 *Id.* 161; and further, as held in *Gottuso* v. *Baker,* 80 *N. J. L.* 520: "Under our constitutional provision the title of an act is in the nature of a label by which the object of the act is displayed; it is not a table of contents or an index to everything that the statute contains." This was approved in the Court of Errors and Appeals in *Board* v. *Tait,* 81 *N. J. Eq.* 161.

Measured by these standards, we conclude that the statute in question is not unconstitutional for either of the reasons advanced and urged.

Second. The prosecutors next urge that the ordinances are repugnant to section 73 (*Pamph. L.* 1903), as amended by *Pamph. L.* 1907, *ch.* 103, being the City act before referred to, under which Long Branch was incorporated.

The highway improvement ordinance cannot be, in any-wise, affected by this contention. The ordinance does not point to, or by its terms, rest upon any particular statute as the authority for and basis of its enactment, and, therefore, as held in *Livermore* v. *Millville*, 85 *N. J. L.* 655 (at *p.* 657). "If there was and is any legislation permitting such a bond issue for the purpose indicated, the city is entitled to rely upon it without specific reference thereto in the ordinance." It is apparent that such highway ordinance is authorized by the Home Rule act (*Pamph. L.* 1917, *ch.* 152), which super-sedes the Walsh act. *Pamph. L.* 1911, *p.* 462; *Public Service* v. *General Omnibus*, 93 *N. J. L.* 344; *Wethling* v. *Orange*, 94 *Id.* 36, and *Lombardo* v. *Lodi*, 7 *N. J. Mis. R.* 72. But again it is urged that adoption of this ordinance under the Home Rule act cannot be justified because notices of inten-tion to adopt the ordinance were not mailed to persons whose property would be subject to assessment for the improvement as required by *Pamph. L.* 1929, *ch.* 287, *p.* 674, § 1, ¶ *b*. Such ordinance having been in all other respects regularly and properly adopted under the terms of such statute, we are un-able to see how these prosecutors can complain or success-fully raise this question inasmuch as their lands are con-cededly so far beyond the line of the proposed improvement as to be outside of the assessment zone. The statute itself provides that "failure to mail the notice herein provided for shall not invalidate any ordinance, proceeding or assess-ment," and this was construed by this court in *Root* v. *Jersey City*, 5 *N. J. Mis. R.* 973, adversely to prosecutors' contention. But, if that were not so, *Pamph. L.* 1930, *ch.* 127, approved April 15th, 1930, validates any improvement ordinance adopted by a city for the improving and constructing of highways "notwithstanding any omission or defect in said ordinances or notice thereof; provided said ordinances were adopted and notice thereof given by publication in newspapers

as required by law." Such legislation, it seems to us, rests entirely in legislative discretion and cures any defect respecting the mailing of notices of intention to adopt.

The irresistible conclusion is that this legislation excuses and cures any defect in the highway improvement ordinance, and that it does so even if the 1929 supplement to the City act of 1903 is unconstitutional, and even if the fact should be that it was not adopted in strict conformity with the Home Rule act amendment of 1929.

We conclude, therefore, that the highway improvement ordinance is a valid municipal act, first, because the supplement of 1929 to the City act of 1903 is constitutional, and second, that it is so under the Home Rule act amendment of 1929, section 1, paragraph b, notwithstanding failure to give notice of intention to adopt it.

Turning now to the bonding ordinance, it is urged that it cannot be justified or find support under the City act of 1903 because section 73 thereof fixes the term at not exceeding thirty years; the rate of interest at not more than four and one-half per cent. per annum, and before issuance of such bonds the question of so doing shall be submitted to the legal voters, and the total shall not exceed fifteen per cent. of the value of property for taxing purposes in such city. It seems to be conceded that the financing of the improvement in question as provided for in this ordinance is not in accord with the provisions and limitations of such statute. Obviously it is not and it must rest for authority to support it upon the Pierson act. *Pamph. L.* 1916, *p.* 525. In that respect, prosecutors urge, the ordinance cannot find legal support for the reason that the financing contemplated will cause the debt limit to be exceeded and because no supplemental debt statement was filed prior to the passage of the ordinance.

Respondent says that the financing proposed by this ordinance will not produce an excess of indebtedness limited by the statute and that prosecutors have not shown that it will, and that the burden is theirs to so show and further urge that it has not been shown that a supplemental debt statement was not filed prior to the passage of the ordinance.

The return made to the writ does not include such supplemental debt statement, and in that situation we think we are obliged to assume that none was filed. We also conclude that the burden of establishing whether or not the debt limit will be exceeded does not rest upon the prosecutors but would appear to be a precedent requirement resting upon the municipality under paragraph 2 of section 12, which expressly requires: "Prior to the passage of any ordinance or resolution authorizing notes or bonds under this act the chief financial officer shall make and file a supplemental debt statement * * *." An exception is therein contained when the notes or bonds are exclusively for certain purposes. The purposes referred to do not include the purposes covered by the ordinance in question.

We think this provision of the Pierson act presents a positive requirement, and does not leave obedience thereto discretionary or in anywise excusable. Its undoubted purpose is to present substantial evidence of the financial condition of the municipality for the use and benefit of taxpayers, purchasers of its securities and all other interested parties; information, otherwise difficult, if not impossible for such parties to obtain. To repeat, it seems to us that this requirement is mandatory and that it does not lie in the hands of the chief financial officer of the municipality to say that a proposed financing will not cause an exceeding of the debt limit. On the contrary, there is a plain, unbending requirement that he shall cause such a statement to be filed annually, and a supplemental statement to be filed "prior to the passage of any ordinance * * * authorizing * * * bonds under this act * * *."

Technical as this ground may appear to be we conclude it is substantial and non-compliance cannot be excused.

But respondent urges that notwithstanding such ordinance may not have been adopted in strict compliance with the Pierson act, *supra*, it is nevertheless valid because it is adopted under *Pamph. L.* 1930, *ch.* 128, which provides that when any municipality has been authorized by any act to issue notes or

bonds for any public work or improvement and such act is silent as to the method or mode of procedure to be adopted, it shall conform in all respects to the provisions of the Pierson act. This is well enough and is undoubtedly the license and authority for the respondent to resort to that act. It also urges *Pamph. L.* 1930, *ch.* 126, as validating such ordinance. That statute provides that all proceedings adopted by cities of this state before the passage of the act for the issuance of bonds for the purpose of financing a highway "are hereby validated, ratified and confirmed, notwithstanding that ordinances authorizing such bonds shall not have been in compliance with the provisions *. * *" of the Pierson act, "and the issuance of such bonds pursuant to said act and this act and by virtue of said ordinances is hereby authorized, validated and approved; provided, that an ordinance authorizing such bonds has been adopted and published by such city in accordance with the provisions * * *" of the Home Rule act, *supra.*

We are at an absolute loss to understand how this act can possibly validate the ordinance in question. The Home Rule act (*Pamph. L.* 1917, *ch.* 152) contains no provisions respecting the issuing of bonds. The nearest approach to any such authority is section 1, subdivision a of article 14, which authorizes the adoption of ordinance "to manage, regulate and control the finances and property, real and personal of the municipality."

This ordinance we conclude cannot be justified under the City act of 1903 (*Pamph. L.* 1903, *ch.* 168), nor the Walsh act (*Pamph. L.* 1911, *p.* 462) as to which it may be said that it contains no bonding provisions, nor the Home Rule act. *Pamph. L.* 1917, *ch.* 152. It can only find authority in the Pierson act (*Pamph. L.* 1916, *p.* 525), and as has been shown was not adopted in conformity to the provisions of that act.

This ordinance (bond issue case 255) must therefore be set aside and the highway construction ordinance (case 254) affirmed and approved, and the writ bringing it up for review dismissed.